ATTORNEY FOR APPELLANT
J. Brian Tracey
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE
Scott B. Ainsworth
Decatur, Indiana

# In the
# Indiana Supreme Court



FILED
Mar 20 2012, 12:02 pm

CLERK
of the supreme court,
court of appeals and
tax court

No. 01S04-1107-PL-438

HAROLD J. KLINKER,

*Appellant (Defendant below)*,

v.

FIRST MERCHANTS BANK, N.A.,

*Appellee (Plaintiff below)*.

Appeal from the Adams Circuit Court, No. 01C01-0903-PL-001
The Honorable Frederick A. Schurger, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 01A04-1003-PL-247

**March 20, 2012**

**Sullivan, Justice.**

The trial court granted summary judgment to the plaintiff and awarded it treble damages and attorney's fees under the Indiana Crime Victims' Compensation Act, finding that the undisputed facts established that the defendant had committed criminal fraud. We reverse the judgment on the fraud claims because there are genuine issues of material fact as to whether the defendant acted with the requisite criminal intent.

**Background**

The defendant, Harold J. Klinker, managed and operated Trucks Unlimited, Inc. ("Trucks"), a used-car dealership in Decatur, Indiana. The plaintiff, First Merchants Bank, N.A. ("FMB"), financed Trucks' vehicle inventory through certain floor-plan agreements. The floor-plan loans were secured by various security interests in Trucks' assets, all of which were duly perfected. Additionally, Klinker and his wife personally guaranteed Trucks' debts, and this was secured by other perfected security agreements and business mortgages.

The relevant terms of the most recent floor-plan agreement were as follows: FMB would loan money to Trucks exclusively for the purchase of vehicles for resale. In return, Trucks would grant FMB a first-priority lien in the purchased vehicles. When a vehicle was sold, Trucks was required to pay FMB a sum equal to the loaned purchase-money amount for that vehicle. The financed vehicles were to be held for resale at designated locations provided for in the agreement. Although Trucks was permitted to retain control of the vehicles' titles, it was prohibited from transferring or negotiating any documents of title without FMB's consent.

On December 23, 2008, a floor-plan audit of Trucks' inventory was performed on FMB's behalf. It was discovered that 31 vehicles for which FMB had loaned purchase money were not in Trucks' possession. No proceeds from the sale or transfer of those vehicles had been paid to FMB. And it was discovered that some of them had been transferred to another dealer to be held and sold by him, but no proceeds from those transfers had been remitted to FMB. During the audit, Klinker was asked about a specific pickup truck that had been floor planned but was not on the lot. He informed the auditor that the vehicle was out on a test drive and had not been sold, but it was later discovered that it had been sold almost two weeks prior.

On March 17, 2009, FMB filed an eight-count complaint in Adams Circuit Court against Klinker, Trucks, and others (only Klinker appeals). Count I alleged fraud and Count II sought treble damages and attorney's fees under Indiana Code section 34-24-3-1. Counts III through VI sought enforcement of the floor-plan agreements, the guarantees, the business mortgages, and the

2

security agreements, respectively. And Counts VII and VIII sought enforcement of non-business-related promissory notes and mortgages. Klinker did not file a responsive pleading.

Several months later, FMB moved for summary judgment on Counts I through VII.[1] By then only 22 vehicles were "missing." Klinker filed a memorandum in opposition to which was attached his two-page affidavit. The trial court refused to consider the affidavit, reasoning that it had not been properly designated, and concluded that there were no genuine issues of material fact and that Klinker had defaulted and acted with intent to commit fraud. Accordingly, it granted summary judgment to FMB on all seven counts and awarded treble damages and attorney's fees on the fraud claims. Klinker filed a Motion to Correct Error,[2] which was denied.

On appeal, the Court of Appeals held that the trial court had erred in refusing to consider Klinker's affidavit but that summary judgment was proper because the affidavit consisted of self-serving statements unsupported by real evidence and that the undisputed facts disclosed three "badges of fraud." Klinker v. First Merchants Bank, N.A., 938 N.E.2d 846, 849-52 (Ind. Ct. App. 2010). Klinker's Petition for Rehearing was denied.

Klinker sought, and we granted, transfer, Klinker v. First Merchants Bank, N.A., ___ N.E.2d ___ (Ind. 2011) (table), thereby vacating the opinion of the Court of Appeals, Ind. Appellate Rule 58(A).

**Discussion**

We consider only whether summary judgment on the fraud and treble-damages claims was proper. In reviewing a grant of summary judgment we face the same issues as the trial court and follow the same process. Owens Corning Fiberglass Corp. v. Cobb, 754 N.E.2d 905, 908 (Ind. 2001). Under Trial Rule 56(C), the moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that it is entitled to judgment as a

---

[1] The present status of Count VIII is unclear.
[2] Although Klinker's filing was labeled as a "Motion to Reconsider," we summarily affirm the decision of the Court of Appeals to treat it as a Motion to Correct Error. Ind. Appellate Rule 58(A)(2); see Klinker v. First Merchants Bank, N.A., 938 N.E.2d 846, 848 n.3 (Ind. Ct. App. 2010).

matter of law.  Dreaded, Inc. v. St. Paul Guardian Ins. Co., 904 N.E.2d 1267, 1269-70 (Ind. 2009).  If it is successful, the burden shifts to the nonmoving party to designate evidence establishing the existence of a genuine issue of material fact.  Id. at 1270; Jarboe v. Landmark Cmty. Newspapers of Ind., Inc., 644 N.E.2d 118, 123 (Ind. 1994).

In addition to contract damages, which are not disputed, FMB seeks exemplary damages under the Indiana Crime Victims' Compensation Act ("CVCA").  Under the CVCA, a person who suffers a pecuniary loss as a result of certain property crimes may bring a civil action against the person who caused the loss and recover up to three times the actual damages and a reasonable attorney's fee, along with other expenses.  Ind. Code § 34-24-3-1 (2008).  A criminal conviction is not a condition precedent to recovery under this statute.  White v. Ind. Realty Assocs. II, 555 N.E.2d 454, 456 (Ind. 1990) (interpreting statutory predecessor).  Rather, the claimant merely must prove each element of the underlying crime by a preponderance of the evidence.  Id.

# I

FMB contends that Klinker violated Indiana Code section 35-43-5-4(8), which provides that "[a] person who . . . with intent to defraud the person's creditor or purchaser, conceals, encumbers, or transfers property . . . commits fraud, a Class D felony."  Effectively, this statute makes it a crime to execute a fraudulent conveyance with the specific intent to "defraud" the person's creditors.  Summary judgment for FMB on this claim is proper only if the undisputed facts show that (1) Klinker (2) concealed, encumbered, or transferred property (3) with the specific intent to defraud FMB, his creditor.

It is undisputed that Klinker transferred financed vehicles without FMB's knowledge, thereby concealing them from his creditor.  It is also undisputed that doing so constituted a breach of contract, but this does not lead inescapably to a finding of criminal fraud.  See Sachs v. Blewett, 206 Ind. 151, 156, 185 N.E. 856, 858 (1933) ("This court has repeatedly said that actionable fraud cannot be predicated upon a promise to do a thing in the future, although there may be no intention of fulfilling the promise." (citations omitted)); Milburn v. Phillips, 136 Ind.

4

680, 687, 34 N.E. 983, 984 (1893) (noting that fraud is never presumed and must be proved by the party charging it, "the presumption always being against bad faith" (citations omitted)); Jackson v. Myers, 120 Ind. 504, 509, 22 N.E. 90, 91 (1889) ("Conceding that he was morally bound to execute a conveyance without a demand therefor[e], his failure so to do would not constitute a fraud. To so hold would be to abolish all distinction between fraud and breach of contract."); cf. Manzon v. Stant Corp., 138 F. Supp. 2d 1110, 1116 (S.D. Ind. 2001) ("'It is precisely this mens rea that differentiates criminal conversion from the more innocent breach of contract . . . that the criminal conversion statute was not intended to cover.'" (ellipsis in original) (citation omitted)); Jet Credit Union v. Loudermilk, 879 N.E.2d 594, 597 (Ind. Ct. App. 2008) (similar), trans. denied.

To obtain summary judgment, FMB must also demonstrate that the undisputed facts show that Klinker acted with the requisite mens rea – the specific intent to defraud. "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." I.C. § 35-41-2-2(a). Although "defraud" is not defined by statute, it is a familiar legal term dating to the fourteenth century meaning "[t]o cause injury or loss to (a person) by deceit." Black's Law Dictionary 488 (9th ed. 2009). Thus, summary judgment is proper only if the undisputed facts show that, when Klinker made the challenged transfers, his conscious objective was to cause injury or loss to FMB by deceit.

The Court of Appeals and the trial court both employed the analysis used in cases where a judgment creditor brings proceedings supplemental to set aside as a fraudulent conveyance a transfer of property made by a judgment debtor. See Klinker, 938 N.E.2d at 850-51. In those cases, fraudulent intent may be inferred from various "badges of fraud," such as:

1. a transfer of property by a debtor while a lawsuit is pending;
2. a transfer of property that renders the debtor insolvent or greatly reduces the debtor's estate;
3. a series of contemporaneous transactions that strip the debtor of assets available for execution;
4. a secret or hurried transaction not occurring in the usual mode of business;
5. a transaction conducted in a manner that differs from customary methods;
6. a transaction in which the debtor retains benefits over the transferred property;
7. a transfer made for inadequate consideration; and

5

8. a transfer of property between family members.

Milburn, 136 Ind. at 688-91, 34 N.E. at 984-85; Hoesman v. Sheffler, 886 N.E.2d 622, 629-30 (Ind. Ct. App. 2008); Greenfield v. Arden Seven Penn Partners, L.P., 757 N.E.2d 699, 703 (Ind. Ct. App. 2001), trans. denied; Otte v. Otte, 655 N.E.2d 76, 81 (Ind. Ct. App. 1995), trans. denied; Arnold v. Dirrim, 398 N.E.2d 442, 446-47 (Ind. Ct. App. 1979). No single factor is determinative of fraudulent intent, and there is no set formula or threshold number of factors that warrant a finding of fraudulent intent. Hoesman, 886 N.E.2d at 630; Jones v. Cent. Nat'l Bank of St. Johns, 547 N.E.2d 887, 890 (Ind. Ct. App. 1989). Rather, in a particular case the trier of fact must consider the evidence as a whole and in context to determine whether the badges of fraud taken together constitute a pattern of fraudulent intent. Hoesman, 886 N.E.2d at 630.

FBM alleges three badges of fraud: (1) Klinker sold and transferred financed vehicles without paying down loans, thus rendering him insolvent; (2) Klinker sold vehicles contrary to standard business transactions when he did not deliver titles to buyers until well after sale; (3) Klinker made sales/transfers without FMB's knowledge in secret and hurried transactions. The Court of Appeals found that FMB made its prima facie showing through these allegations. See Klinker, 938 N.E.2d at 851. We find otherwise.

Even assuming FMB's designated evidence clearly establishes these alleged badges of fraud, it is not entitled to summary judgment. As we recently explained, "the mens rea element for a criminal offense is almost inevitably, absent a defendant's confession or admission, a matter of circumstantial proof." Hampton v. State, 961 N.E.2d 480, 487 (Ind. 2012). Therefore, finding criminal intent in the absence of a confession invariably requires weighing evidence, judging witness credibility, and drawing reasonable inferences from the facts, all of which are improper in considering a motion for summary judgment. E.g., Bell v. Northside Fin. Corp., 452 N.E.2d 951, 953 (Ind. 1983). Accordingly, summary judgment is almost never appropriate where the claim requires a showing that the defendant acted with criminal intent or fraudulent intent. White, 555 N.E.2d at 457-58; see also Jones, 547 N.E.2d at 891 ("[B]efore such a motion could be granted it would have to be clear that all the 'badges of fraud' pointed to a finding of intent with no inference of a pure motive possible.").

6

This is particularly so for CVCA claims. The CVCA provides a punitive remedy if the claimant can prove that the defendant violated a penal statute, and, as a punitive measure, it should be strictly construed and applied only where the challenged conduct is clearly proscribed. George v. Nat'l Collegiate Athletic Ass'n, 945 N.E.2d 150, 154 (Ind. 2011); see Manzon, 138 F. Supp. 2d at 1116 (reasoning that claimant had a "high" burden in proving crime's elements because CVCA is punitive). Moreover, because CVCA claims combine criminal and civil law, they implicate the state constitutional policy favoring jury intervention in both criminal trials and civil trials.[3] White, 555 N.E.2d at 457; see Ind. Const. art. I, §§ 19, 20.

In sum, although FMB's evidence tends to show three badges of fraud, it is not sufficient to warrant entry of summary judgment on the element of mens rea. Drawing all reasonable inferences in favor of the nonmoving party, it is possible that the trier of fact could find a simple breach of contract here instead of criminal fraud, regardless of how strong the badges of fraud may be. Cf. Tracy v. Morell, 948 N.E.2d 855, 859-61, 863-64 (Ind. Ct. App. 2011) (holding evidence was sufficient to sustain finding that defendant had not acted fraudulently on basis of his testimony even though such testimony was dubious and self-serving when compared to overwhelming objective factors suggesting otherwise).

## II

FMB also claims that Klinker committed fraud on a financial institution – i.e., bank fraud. The bank fraud statute provides in relevant part:

(a) A person who knowingly executes, or attempts to execute, a scheme or artifice:

. . . .

(2) to obtain any of the money, funds, credits, assets, securities, or other property owned by or under the custody or control of a state or federal-

---

[3] Though unclear, it appears that Klinker may have waived his right to a jury trial because nothing in the record demonstrates that he made a demand in accordance with Trial Rule 38. We express no opinion on whether this is so, but, even if it were, it would neither alter our review nor diminish the policy reasons for submitting the element of mens rea to a trier of fact after a trial, because the trial judge's role in considering a motion for summary judgment differs from its role when it sits as the trier of fact.

> ly chartered or federally insured financial institution by means of false or fraudulent pretenses, representations, or promises;

commits a Class C felony.

I.C. § 35-43-5-8(a). Thus, to be entitled to summary judgment on this claim, FMB must show that the undisputed facts establish that (1) Klinker (2) knowingly (3) executed or attempted to execute (4) a scheme or artifice (5) to obtain FMB's money or other property (6) by means of false or fraudulent pretenses, representations, or promises, and (7) that FMB is a state or federally chartered or federally insured financial institution.[4] Cf. Am. Heritage Banco, Inc. v. McNaughton, 879 N.E.2d 1110, 1117-18 (Ind. Ct. App. 2008) (holding that bank fraud statute does not require CVCA claimant to prove elements of common-law fraud).

FMB repeats the allegations it made under its first fraud claim, namely that Klinker committed fraud by making transfers in violation of the floor-plan agreements and without paying down the loans as sales were made. It also alleges that Klinker committed bank fraud when he misrepresented to the auditor the status and location of a particular vehicle. Finally, it alleges that Klinker misrepresented Trucks' status as purchaser or owner of several of the financed vehicles in that Trucks held them by consignment only.

Largely for the reasons discussed in Part I, supra, there is an issue of material fact as to whether Klinker acted with the requisite mens rea under the bank fraud statute. We say "largely" because there are at least two differences under this statute.

First, the mens rea required to commit bank fraud is not "intentionally" but "knowingly." "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." I.C. § 35-41-2-2(b). Thus, to be held liable, Klinker must have been aware of a high probability that he was executing or attempting to execute a scheme or artifice to obtain FMB's money by false or fraudulent pretenses.

---

[4] Klinker does not challenge the FMB affiant's assertion that FMB is a financial institution covered by the statute. Cf. McGowan v. Miller, 109 F.3d 1168, 1175-76 (7th Cir. 1997) (denying habeas relief because, among other things, defendant's conviction under this statute was supported by the evidence where bank managers testified that they were federally insured financial institutions, even though there was no documentary evidence presented).

Second, we fail to see how the badges of fraud used to determine the existence of a fraudulent conveyance are relevant in determining <u>mens</u> <u>rea</u> under this statute. So far as we can tell, those particular badges of fraud have never been used outside the fraudulent-conveyance context. <u>Cf.</u> <u>Milburn</u>, 136 Ind. at 689-91, 34 N.E. at 985 (relying on treatise of fraudulent conveyances in identifying "badges of fraud"). This is not to say that the <u>mens</u> <u>rea</u> element of bank fraud is not amenable to being inferred from circumstantial evidence. It means only that the fraudulent-conveyance badges of fraud (circumstantial evidence) are not relevant in this context – other circumstantial evidence must be presented. <u>Cf.</u> <u>Am. Heritage Banco</u>, 879 N.E.2d at 1118 (holding that trial court erred in dismissing claim because claimant alleged that defendants "were involved with other defendants in a series of transactions in which they made false written representations on loan applications or promissory notes in order to obtain loans"); <u>Asghar v. State</u>, 698 N.E.2d 879, 883 (Ind. Ct. App. 1998) (finding sufficient evidence to support defendant's conviction for attempted bank fraud where circumstantial evidence supported inference that defendant took substantial steps toward engaging in a check-kiting scheme), <u>trans.</u> <u>denied</u>.

There is also an issue of material fact with regard to timing. The misrepresentation that Klinker allegedly made to the auditor <u>after</u> he had obtained the loans is likely not covered by this statute. Nor is the breach of his contractual obligations <u>after</u> FMB loaned him money. This is so because the statute "specifically requires that any fraudulent activity be done knowingly <u>at the time of execution</u>." <u>Payday Today, Inc. v. McCullough</u>, 841 N.E.2d 638, 642 (Ind. Ct. App. 2006) (emphasis added). In <u>McCullough</u>, a small-loan lender sought treble damages under the CVCA alleging that the borrowers had committed bank fraud by stopping payment on a post-dated check they had given the lender as collateral for a loan. <u>Id.</u> at 640-41. The court affirmed the trial court's denial of treble damages because there was no evidence that the borrowers, "in order to obtain loans from [the lender], executed their checks 'knowing' that they were going to stop payment on them." <u>Id.</u> at 642; <u>see</u> <u>also</u> <u>Cash in a Flash, Inc. v. McCullough</u>, 853 N.E.2d 533, 538 (Ind. Ct. App. 2006) (affirming trial court's denial of treble damages because there was no evidence showing that borrower "knew, at the time he executed the check, that he would not place sufficient funds in his account to pay for the loan at the time it came due"). The only allegation that appears to meet the timing requirement is that Klinker borrowed money for purchas-

ing vehicles and failed to do so, even though he told FMB he was purchasing a vehicle. But the record is silent as to whether Klinker failed to purchase any vehicles for which he sought financing.

## III

We emphasize that the issue here is whether summary judgment was proper. It is not how strong or weak the badges of fraud are. FMB may be able to offer circumstantial evidence tending to demonstrate strong indicia of fraud. But determining whether those facts actually establish that Klinker committed criminal fraud is a question for the trier of fact. Accordingly, we do not hold that FMB's evidence would be legally insufficient to sustain a finding of fraud at the conclusion of trial. We hold only that the evidence designated by the movant at the summary judgment stage in this case does not justify dispensing with the trial altogether.[5]

## Conclusion

We reverse the entry of summary judgment for FMB on its fraud and treble-damages claims and remand to the trial court for further proceedings.

Shepard, C.J., and Dickson, Rucker, and David, JJ., concur.

---

[5] Because FMB failed to make a prima facie showing that it is entitled to summary judgment, we need not determine whether the trial court erred in excluding Klinker's affidavit. On a related point, we deny as moot Klinker's Verified Motion to Amend or Remand, which was filed after oral argument and seeks to cure certain deficiencies.