# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 07 2017, 6:41 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Peter S. Kovacs
Peter Kovacs Law PC
Fishers, Indiana

ATTORNEY FOR APPELLEE

Joshua W. Casselman
Rubin & Levin, P.C.
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| B.J.'s Auto Wholesale, Inc., and John L. Medeiros a/k/a John Medeiros, <br> *Appellants-Defendants,* <br><br> v. <br><br> Automotive Finance Corporation d/b/a AFC Automotive Finance Corporation d/b/a AFC, <br> *Appellee-Plaintiff.* | December 7, 2017 <br><br> Court of Appeals Case No. 49A05-1704-CC-885 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Thomas J. Carroll, Judge <br><br> Trial Court Cause No. 49D06-1610-CC-36619 |

**Robb, Judge.**

# Case Summary and Issues

[1] B.J.'s Auto Wholesale, Inc. ("B.J.'s Auto") and John Medeiros appeal the trial court's judgment in favor of Automotive Finance Corporation ("AFC"). B.J.'s Auto and Medeiros raise four issues for our review which we consolidate and restate as: (1) whether the trial court erred in entering summary judgment in favor of AFC; (2) whether the trial court erred in granting AFC's motion to strike; and (3) whether the trial court afforded B.J.'s Auto a fair opportunity to retain counsel in Indiana. Concluding the trial court did not err in granting summary judgment in favor of AFC, did not err in granting AFC's motion to strike, and afforded B.J.'s Auto sufficient time to retain counsel, we affirm the judgment of the trial court.

# Facts and Procedural History

[2] AFC is a corporation that provides financing to car dealerships. AFC provides loans to dealerships to purchase vehicles, which the dealerships then sell to a consumer. In return, AFC receives a security interest in a dealership's inventory.

[3] B.J.'s Auto is a used car dealership in Palmetto, Florida. Medeiros is the president of B.J.'s Auto. In January of 2011, AFC and B.J.'s Auto entered into a Promissory Note and Security Agreement ("Agreement"). To secure its obligations under the Agreement, B.J.'s Auto granted AFC a purchase money security interest in the vehicles purchased by B.J.'s Auto. The Agreement

provides B.J.'s Auto "shall hold the amount received from the disposition of inventory in Trust for the benefit of [AFC]." Appellant's Appendix, Volume 2 at 25. The Agreement further provides B.J.'s Auto "shall pay to [AFC] . . . an amount equal to the unpaid balance of the Purchase Money Inventory Obligations . . . ." *Id.* Medeiros personally guaranteed payment of B.J.'s Auto's obligations under the Agreement. *See id.* at 33-34.

[4] On October 14, 2016, AFC filed its three-count complaint against B.J.'s Auto and Medeiros. Count I alleged breach of contract against B.J.'s Auto for failure to make payments according to the terms of the Agreement and alleged an unpaid balance of $24,808; Count II alleged breach of contract against Medeiros as guarantor of the Agreement; and Count III alleged conversion against Medeiros and B.J.'s Auto for failing to hold the proceeds of the sale of inventory in trust for the benefit of AFC. Count III also sought treble damages under the Indiana Crime Victims Relief Act ("CVRA"). On November 7, 2016, Medeiros filed pro se appearances, on behalf of himself and B.J.'s Auto, and sought an extension of time to interview and hire counsel in Indiana.

[5] On November 23, 2016, AFC filed its motion for summary judgment. In support of its motion, AFC designated the affidavit of Jerry Bosl, its senior collections manager. Bosl's affidavit provided the unpaid balance under the Agreement was $19,818, plus accrued fees of $1,310 and interest. The trial court then issued an order on December 2, 2016, admonishing Medeiros and reminding him that although he may proceed pro se, a corporation must be

represented by an attorney under Indiana law. Ten days later, Medeiros filed a pro se answer and counterclaim on behalf of himself and B.J.'s Auto.

[6] In late December, Medeiros filed an affidavit in opposition to AFC's motion for summary judgment.[1] The affidavit was of his wife, Terry Medeiros, wherein she stated as vice president of B.J.'s Auto, she is responsible for making all contractual payments. Terry disputed that a failure to make payments or default under the Agreement had occurred. Shortly thereafter, AFC filed two motions seeking to strike: (1) B.J.'s Auto's appearance, answer, and counterclaim; and (2) the affidavit in opposition to AFC's motion for summary judgment. On January 10 and 12, 2017, the trial court granted AFC's motions to strike. The trial court's order dated January 12, 2017, striking B.J.'s Auto's appearance, granted B.J.'s Auto "ten (10) days from the date of [the] Order to retain counsel and file a proper appearance or risk the entry of a judgment by default." *Id.* at 141. The trial court also issued an order setting AFC's motion for summary judgment for hearing. That order, dated January 13, 2017, set the summary judgment hearing for February 24, 2017, and reminded B.J.'s Auto "the Corporation must be represented by an attorney" at the hearing. *Id.* at 143.

[7] Despite these warnings, B.J.'s Auto did not retain counsel. Instead, Medeiros filed an affidavit, a motion to reconsider, and a motion to continue hearing on

---

[1] Medeiros apparently attempted to file two affidavits, the affidavit of his wife, Terry Medeiros, and his own affidavit. Medeiros personal affidavit was not recorded and does not appear in the appendix.

January 17, January 23, and February 20, 2017, respectively. The trial court denied Medeiros' motion to continue the hearing and neither Medeiros nor any attorney appeared at the summary judgment hearing. Following the hearing, the trial court entered judgment against Medeiros and B.J.'s Auto on all claims. The judgment against Medeiros and B.J.'s Auto totaled $68,736.

[8] On March 27, 2017, counsel filed an appearance for Medeiros and B.J.'s Auto and also filed a motion to correct error. Like this appeal, the motion alleged: (1) AFC failed to present evidence of mens rea necessary to support treble damages under the CVRA; (2) entry of summary judgment for conversion was in error; (3) the trial court erred in striking Medeiros' affidavit; and (4) the trial court failed to allow sufficient time for B.J.'s Auto to hire counsel. The trial court denied Medeiros and B.J.'s Auto's motion to correct error. Medeiros and B.J.'s Auto now appeal.

# Discussion and Decision

## I. Summary Judgment v. Default Judgment

[9] As an initial matter, we address AFC's argument that B.J.'s Auto's appeal of the default judgment is not properly before this court. AFC alleges because the trial court entered default judgment against B.J.'s Auto, the proper procedure was for B.J.'s Auto to file a motion for relief from judgment, not a motion to correct error. In support of its argument, AFC cites *Siebert Oxidermo, Inc. v. Shields*, 446 N.E.2d 332 (Ind. 1983). There, our supreme court held,

> [T]he proper procedure in the Indiana Rules of Trial Procedure
> for setting aside an entry of default or grant of default judgment
> thereon is to first file a Rule 60(B) motion to have the default or
> default judgment set aside. Upon ruling on that motion by the
> trial court the aggrieved party may then file a Rule 59 Motion to
> Correct Error alleging error in the trial court's ruling on the
> previously filed Rule 60(B) motion. Appeal may then be taken
> from the court's ruling on the Motion to Correct Error.

*Id.* at 337. Although we agree with AFC this is the proper procedure for setting aside a default judgment, the trial court entered judgment pursuant to summary judgment proceedings in this case.

[10] In *Anderson v. Broadmoor Corp.*, 173 Ind. App. 290, 363 N.E.2d 1042 (1977), this court faced a factually similar scenario. Broadmoor filed a complaint against Anderson alleging breach of contract and fraud. Anderson answered the complaint denying the breach and the fraud. Eventually, Anderson's attorney filed a motion to withdraw representation and the trial court granted that motion. Two weeks later, Broadmoor filed its motion for summary judgment and the trial court set the motion for a hearing. Neither Anderson nor his counsel appeared at the hearing and the trial court entered judgment in favor of Broadmoor, noting Anderson's notice of the proceedings and failure to appear. Anderson then hired counsel and appealed, alleging the trial court did not properly follow default judgment procedures.

[11] On appeal, this court noted that although the trial court used the "default terminology," that did not alter the fact the proceedings in the trial court were conducted pursuant to a proper motion for summary judgment. *Id.* at 293, 363

N.E.2d at 1044 (quotations omitted). We further noted the "record clearly shows that the court made its decision upon a summary judgment motion and upon summary judgment grounds." *Id.* at 295, 363 N.E.2d at 1045.

[12] Likewise, the trial court here entered judgment in favor of AFC on all claims following the hearing on AFC's motion for summary judgment. Although the trial court's January 12, 2017 order threatens use of "judgment by default," and its February 24, 2017 order is titled "default judgment," it does not change the fact the trial court's judgment was entered pursuant to a motion for summary judgment and upon summary judgment grounds. Appellant's App., Vol. 2 at 12, 141. Further, the record and Chronological Case Summary ("CCS") do not reveal AFC ever filed a motion for default judgment. *See* Ind. Trial Rule 55(B) ("In all cases the party entitled to a judgment by default shall apply to the court therefor . . . ."). Because the judgment was entered pursuant to summary judgment proceedings, B.J.'s Auto was not required to file a Trial Rule 60(B) motion for relief from judgment. *See Larson v. Karagan*, 979 N.E.2d 655, 658 (Ind. Ct. App. 2012) (appealing the entry of summary judgment from a motion to correct error).

## II.  Summary Judgment

### A.  Standard of Review

[13] We review summary judgment orders de novo. *Holiday Hosp. Franchising, Inc. v. AMCO Ins. Co.*, 983 N.E.2d 574, 577 (Ind. 2013). Summary judgment is appropriate if the designated evidence shows there is no genuine issue as to any

fact material to a particular issue or claim, and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). In viewing the matter through the same lens as the trial court, we construe all designated evidence and reasonable inferences therefrom in favor of the non-moving party. *Holiday Hosp. Franchising*, 983 N.E.2d at 577. The party appealing the trial court's summary judgment determination bears the burden of persuading us the ruling was erroneous. *Mullin v. Mun. City of S. Bend*, 639 N.E.2d 278, 280-81 (Ind. 1994). Nonetheless, we "carefully scrutinize[ ] the trial court's decision to assure that the party against whom summary judgment was entered was not improperly prevented from having its day in court." *Id.* at 281.

## B. Treble Damages and Conversion

[14] B.J.'s Auto and Medeiros make two arguments with respect to the trial court's entry of summary judgment: (1) they assert because the trial court awarded treble damages pursuant to CVRA,[2] our supreme court's opinion in *Klinker v. First Merchants Bank NA*, 964 N.E.2d 190 (Ind. 2012), controls and mandates a showing of the requisite mens rea, which they allege AFC failed to demonstrate

---

[2] The CVRA provides that "[i]f a person . . . suffers a pecuniary loss as a result of [conversion], the person may bring a civil action against the person who caused the loss for . . . [a]n amount not to exceed three (3) times the actual damages of the person suffering the loss . . . ." Ind. Code § 34-24-3-1(1)(A). The crime of conversion occurs when a person "knowingly or intentionally exerts unauthorized control over property of another person . . . ." Ind. Code § 35-43-4-3(a). Further, a criminal conviction is not a condition precedent to recovery under the CVRA. Rather, the claimant merely must prove each element of the underlying crime by a preponderance of the evidence. *White v. Ind. Realty Assocs. II*, 555 N.E.2d 454, 456 (Ind. 1990).

here; and (2) conversion cannot be based on failure to pay a debt. We disagree with B.J.'s Auto and Medeiros.

[15] First, as noted by AFC, B.J.'s Auto failed to comply with multiple warnings from the trial court that it must be represented by an attorney pursuant to Indiana law. *See* Ind. Code § 34-9-1-1(c). Despite these warnings, B.J.'s Auto failed to hire counsel and Medeiros attempted to represent the corporation himself. Because Medeiros is not a licensed attorney in Indiana and was statutorily unable to represent the corporation, the trial court granted AFC's motion to strike B.J.'s Auto's appearance, answer, counterclaims, and affidavit. Consequently, B.J.'s Auto failed to respond to AFC's complaint. Indiana Rule of Trial Procedure 8(D) provides that "[a]verments in a pleading to which a responsive pleading is required . . . are admitted when not denied in the responsive pleading." AFC's complaint specifically alleged B.J.'s Auto and Medeiros converted its property and that it was therefore entitled to damages pursuant to the CVRA. By operation of Trial Rule 8(D), B.J.'s Auto admitted these allegations and that is sufficient to support the trial court's award of treble damages under the CVRA. *See Heartland Res., Inc. v. Bedel*, 903 N.E.2d 1004, 1007-08 (Ind. Ct. App. 2009) (affirming an award of treble damages under the CVRA where the allegations in the complaint were taken as true when the trial court entered default judgment).

[16] Second, we disagree with B.J.'s Auto and Medeiros' argument that AFC failed to demonstrate the requisite mens rea to support an award of treble damages under the CVRA or that its claim of conversion was solely based on a failure to

pay a debt. In support thereof, B.J.'s Auto and Medeiros cite to *Klinker v. First Merchs. Bank, NA*, 964 N.E.2d 190 (Ind. 2012). There, Klinker, the manager and operator of a used-car dealership ("Dealership"), entered into a financing agreement with First Merchants Bank ("FMB"). FMB provided loans to the Dealership in return for a security interest in the Dealership's vehicle inventory. The financing agreement also provided that financed vehicles were to be held for resale at designated locations provided for in the agreement. Although the Dealership was permitted to retain control of the vehicles' titles, it was prohibited from transferring or negotiating any documents of title without FMB's consent.

[17] Thereafter, an audit of the Dealership's inventory discovered thirty-one vehicles for which FMB had loaned purchase money were not in the Dealership's possession and no proceeds from the sale or transfer of those vehicles had been paid to FMB. FMB discovered that some of the vehicles had been transferred to another dealer to be held and sold, but no proceeds from those transfers had been remitted to FMB. FMB filed a lawsuit against the Dealership and Klinker alleging fraud and seeking treble damages under the CVRA. Several months later, FMB moved for summary judgment alleging three "badges of fraud." FMB alleged that (1) Klinker sold and transferred financed vehicles without paying down loans, thus rendering him insolvent; (2) Klinker sold vehicles contrary to standard business transactions when he did not deliver titles to buyers until well after sale; and (3) Klinker made sales/transfers without FMB's knowledge in secret and hurried transactions. *Id.* at 194. The trial court

entered summary judgment in favor of FMB concluding there were no genuine issues of material fact and that Klinker had defaulted and acted with intent to commit fraud.

[18] On appeal, our supreme court reversed the trial court's entry of summary judgment in favor of FMB. *Id.* at 195. The court noted that to obtain summary judgment on its allegations of fraud, FMB must demonstrate the undisputed facts showed Klinker acted with "specific intent to defraud." *Id.* at 194. In reversing the trial court, the court stated,

> Even assuming FMB's designated evidence clearly establishes these alleged badges of fraud, it is not entitled to summary judgment. As we recently explained, the mens rea element for a criminal offense is almost inevitably, absent a defendant's confession or admission, a matter of circumstantial proof. Therefore, finding criminal intent in the absence of a confession invariably requires weighing evidence, judging witness credibility, and drawing reasonable inferences from the facts, all of which are improper in considering a motion for summary judgment. Accordingly, summary judgment is almost never appropriate where the claim requires a showing that the defendant acted with criminal intent or fraudulent intent.

*Id.* at 195 (internal citations and quotations omitted).

[19] *Klinker* is not directly on point and does not aid B.J.'s Auto and Medeiros. As noted, by failing to respond to the complaint, B.J.'s Auto admitted the

complaint's allegations.[3] Moreover, unlike fraud, which requires a showing of specific intent to defraud, conversion requires the defendant act "knowingly or intentionally." Ind. Code § 35-43-4-3(a). "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b). In the case of conversion, the claimant must prove the control exercised over the property was unauthorized and the defendant was aware of a high probability the control was unauthorized. *Midland-Guardian Co. v. United Consumers Club, Inc.*, 499 N.E.2d 792, 797-98 (Ind. Ct. App. 1986), *trans. denied*.

[20] AFC has alleged and demonstrated a high probability Medeiros exerted unauthorized control over AFC's property. According to the terms of the Agreement, which was signed and personally guaranteed by Medeiros, B.J.'s Auto was required to "hold the amount received from the disposition of inventory in Trust for the benefit of [AFC]." Appellant's App., Vol. 2 at 25. B.J.'s Auto and Medeiros did not do so and knowingly used the funds in a manner inconsistent with the Agreement. Without any designated evidence to

---

[3] The complaint alleges B.J.'s Auto and Medeiros "knowingly and intentionally converted [AFC's] property . . . ." Appellant's App., Vol. 2 at 21.

the contrary,[4] we conclude there is no genuine issue of material fact and the trial court did not err in granting summary judgment in favor of AFC.[5]

## III. Affidavit of Terry Medeiros

[21]    B.J.'s Auto and Medeiros also challenge the trial court's order granting AFC's motion to strike the affidavit of Terry Medeiros.

[22]    AFC filed its motion for summary judgment on November 23, 2016. Pursuant to Indiana Rule of Trial Procedure 56(C), B.J.'s Auto and Medeiros had thirty days to respond to the motion. Trial Rule 6(E) provides a party with three additional days to respond if they are served by mail. Therefore, B.J.'s Auto and Medeiros had thirty-three days to timely file their response and any

---

[4] Again, we note the trial court struck the affidavit of Terry Medeiros for being untimely filed. We address the issue of its exclusion below.

[5] We further disagree with B.J.'s Auto and Medeiros' argument the judgment for conversion was based solely on failure to pay a debt. *See Bowden v. Agnew*, 2 N.E.3d 743, 751 (Ind. Ct. App. 2014) (holding conversion may not be based on failure to pay a debt). In *Kopis v. Savage*, 498 N.E.2d 1266 (Ind. Ct. App. 1986), Kopis received a $40,000 deposit from Savage toward the purchase price of certain property. Kopis comingled the deposit with other unrelated accounts and refused to refund the money to Savage when the deal fell through. *Id.* at 1269. Kopis argued on appeal that his actions were a refusal to pay a debt and did not support an action for conversion. We agreed with Kopis, but noted that money may be the subject of an action for conversion, so long as it is capable of being identified as a special chattel. *Id.* at 1270. We concluded Kopis no longer had a property interest in the specific funds and observed,

> The parties did not agree to set up an escrow account or to deliver the money to any third party for safekeeping. We can find nothing in the conduct of the parties or in the wording of the receipt which indicates the parties intended for Savage to retain any ownership or possessory rights in the $40,000.

*Id.* at 1270. Here, by the terms of the Agreement and Indiana Code section 26-1-9.1-315(a)(2), AFC retained a security interest in B.J.'s Auto's inventory and the proceeds from that inventory. *See* Ind. Code § 26-1-9.1-315(a)(2) ("[A] security interest attaches to any identifiable proceeds of collateral."). The claim of conversion is not based upon a failure to pay a debt, but on failing to hold the funds in trust for the benefit of AFC and using them in a manner inconsistent with the Agreement. *See Clark-Silberman v. Silberman*, 78 N.E.3d 708, 718 (Ind. Ct. App. 2017) (holding wife converted trust property when she removed cash from safe deposit box without authorization).

affidavits. Thirty-three days from November 23, 2016 is December 26, 2016. Because the trial court was closed on December 26, the proper date to file the motion in response to summary judgment was extended to December 27, 2016. *See* Ind. Trial Rule 6(A).

[23] The affidavit of Terry Medeiros submitted by Medeiros is file stamped December 29, 2016. The CCS also indicates it was filed on that date. B.J.'s Auto and Medeiros allege they filed the affidavit on December 27, 2016, pursuant to Indiana Rule of Trial Procedure 5(F), which provides that "[f]iling by registered or certified mail . . . shall be complete upon mailing or deposit." However, we have no basis to conclude B.J.'s Auto and Medeiros filed their motion by registered or certified mail on December 27. In its motion to correct error, counsel for the defendants provided tracking data and a shipping receipt which are included in the Appellant's Appendix. *See* Appellant's App., Vol. 2 at 200-01. But the receipt and tracking data are poorly scanned and largely unreadable. Indiana Rule of Appellate Procedure 51(A) provides the "copying process used [for appendices] shall produce text in a distinct black image . . . ." Although failure to comply with the appellate rules does not necessarily result in waiver of the issues presented, it is appropriate where, as here, such noncompliance impedes our review. *See In re Moeder*, 27 N.E.3d 1089, 1097 n.4 (Ind. Ct. App. 2015), *trans. denied*. Moreover, from what we are able to gather from the shipping receipt, it was sent by express mail, which is not considered filed upon mailing or receipt. *See* T.R. 5(F). Additionally, other items properly filed by B.J.'s Auto and Medeiros pursuant to Indiana Rule of Trial Procedure

5(F) are noted as such in the CCS; the affidavit of Terry Medeiros is not noted in the CCS as being filed pursuant to this rule. Accordingly, we conclude the trial court did not err in striking the affidavit from the record.[6]

# IV.  Time to Retain Counsel

[24] Finally, B.J.'s Auto alleges it was not granted sufficient time to retain local counsel in Indiana and the trial court's judgment must therefore be reversed. In support of its argument, B.J.'s Auto cites to *Christian Bus. Phone Book, Inc. v. Indianapolis Jewish Cmty. Relations Council*, 576 N.E.2d 1276 (Ind. Ct. App. 1991).

[25] There, Christian Business Phone Book, Inc. ("Corporation") filed a complaint against the Indianapolis Jewish Community Relations Council ("Council") on May 16, 1990. Almost two months later, the attorneys for the Council filed an answer and a motion to dismiss. The Council's motion was based on the failure of the Corporation to appear by attorney as required by Indiana law. The trial court then set the matter for hearing on September 10, 1990, and counsel for the Corporation filed an appearance on the same day as the hearing. After the hearing, the trial court granted the Council's motion to dismiss.

---

[6] B.J.'s Auto and Medeiros also contend the trial court erred in failing to abide by its own local rule. Specifically, they allege the trial court failed to give them fifteen days to respond to AFC's motion to strike as provided by Marion County Local Rule LR49-TR5-203(B). We conclude any error in the trial court's striking the affidavit is harmless error. As noted, the trial court struck the affidavit for being untimely filed and because of the poor quality of the shipping receipt in the appendix, we have no basis to conclude the affidavit was timely filed. *See* Ind. Trial Rule 61 (providing that errors that do not prejudice the substantial rights of a party will not support the reversal of judgment on appeal).

On appeal, the Council argued that because the Corporation filed its complaint without the benefit of an attorney, the trial court properly dismissed the case even though an attorney had appeared for the Corporation. *Id.* at 1277. This court disagreed and reversed the trial court's dismissal of the complaint stating:

> We cannot support such a terminal result here. Dismissal is a remedy which is not favored in this state because "in our system of justice the opportunity to be heard is a litigant's most precious right and should be sparingly denied." In numerous cases, our appellate courts have held that dismissal should not be granted unless less drastic sanctions will not suffice.

*Id.* (internal citations omitted). We noted in previous cases where appellate courts affirmed a trial court's dismissal following a corporation's failure to be represented by counsel, the trial court "had given the corporation the opportunity, which the corporation refused, to retain proper representation before dismissing the action." *Id.* Thus, we stated a corporate litigant must be given a fair opportunity to retain counsel before a trial court may dismiss the complaint. *Id.* This court held that the trial court abused its discretion by dismissing the Corporation's complaint after an attorney had appeared for the corporation. *Id.*

The facts of this case are distinguishable from *Indianapolis Jewish Community Relations Council* and do not support reversal of the trial court's decision in this case. AFC filed its complaint on October 16, 2016. The trial court entered its judgment on February 24, 2017, and counsel for B.J.'s Auto and Medeiros did not file an appearance until March 27, 2017. During these six months, the trial

court warned Medeiros and B.J.'s Auto, at least three times, that a corporation must be represented by counsel. Notwithstanding these warnings, Medeiros continued to file pleadings and motions on behalf of the corporation. The record does not reveal any explanation by B.J.'s Auto for why it was unable to hire counsel within five months. Moreover, in *Indianapolis Jewish Community Relations Council*, this court specifically held the trial court abused its discretion in dismissing a corporate cause of action after an attorney had appeared for the Corporation. *Id.* at 1277. No attorney appeared for B.J.'s Auto until six months after the litigation commenced and after judgment was entered. The trial court was more than accommodating in affording B.J.'s Auto a fair opportunity to hire counsel in this case. Therefore, we conclude the trial court permitted sufficient time for B.J.'s Auto to hire counsel.

# Conclusion

[29] We conclude the trial court did not err in entering summary judgment in favor of AFC or in granting AFC's motion to strike. In addition, the trial court permitted sufficient time for B.J.'s Auto to retain counsel, but it failed to do so. Accordingly, we affirm the judgment of the trial court.

[30] Affirmed.

Riley, J., and Pyle, J., concur.