



FILED

Jun 12 2025, 8:56 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

Olthof Homes, LLC d/b/a Olthof Homes,

*Appellant-Petitioner*

v.

Town of Chesterton, Indiana, a municipal corporation, and
Town of Chesterton Storm Water Management Board,

*Appellees-Respondents*

---

June 12, 2025

Court of Appeals Case No.
24A-MI-1944

Appeal from the Porter Superior Court

The Honorable Mary A. DeBoer, Judge

Trial Court Cause No.
64D05-2205-MI-4220

---

**Opinion by Judge Vaidik**
Judges Bailey and Scheele concur.

**Vaidik, Judge.**

# Case Summary

[1] The Storm Water Management Board ("the Board") for the Town of Chesterton ("the Town") fined Olthof Homes, LLC, $100,000 for violations of the Town's storm-water-management ordinances. Olthof Homes petitioned for judicial review, and the trial court granted summary judgment for the Town and the Board. Olthof Homes now appeals. Because the relevant penalty provisions are ambiguous at best, and because punitive ordinances are to be strictly construed in favor of the party being punished, we reverse and remand for a re-determination of the fine.

# Facts and Procedural History

[2] In January 2019, Olthof Homes received an Erosion and Sediment Control Permit ("the Permit") for its development of the Springdale subdivision in Chesterton. Between October 2020 and March 2022, the Town, through its Ordinance Violations Bureau, repeatedly fined Olthof Homes $100 or $250 for failing to implement various "storm water quality measures." Appellant's App. Vol. II p. 42; Appellant's App. Vol. V pp. 2-96. Olthof Homes paid more than 100 fines totaling approximately $38,000.

[3]     On March 18, 2022, the Town notified Olthof Homes that an administrative hearing would be held before the Board on March 29 to address more violations for which fines hadn't been issued. The notice alleged violations of two of the Town's storm-water-management ordinances (Chapter 24 of the Town Code)—Section 24-53, which establishes general requirements for storm-water quality control, and Section 24-58, which requires developers to file self-monitoring reports. At the end of the hearing on March 29, the Board determined that the alleged violations had been proven by a preponderance of the evidence, and it issued a stop-work order. The Board ordered Olthof Homes to remedy the violations and to submit a plan for how it would comply with the Permit. The hearing was continued until April 6, and the Board took the issue of additional fines under advisement.

[4]     By the time of the hearing on April 6, Olthof Homes had remedied the violations and submitted a plan for long-term site monitoring and maintenance. There were several deficiencies in the plan, but Olthof Homes addressed them, and the stop-work order was lifted on April 8.

[5]     On April 18, the Board concluded the hearing and issued its Findings and Determination. As relevant here, the Board found:

- Olthof Homes had committed at least 40 violations of Section 24-53 and at least 106 violations of Section 24-58 for which it hadn't been fined.

- Olthof Homes "was in violation of its Permit" from March 18 to March 29 (12 days) and that "[e]ach day that Olthof

was in violation of its Permit is a separate violation of the Ordinance."

- "Previous fines issued to Olthof and related to violations of the ordinance and the Permit have not been sufficient to correct the pattern of violations. Instead, Olthof chose to simply pay fines and ignore complying with the Permit and the [Storm Water Pollution Prevention Plan]."

- Sections 1-9 and 24-301 of the Town Code authorize "a fine for up to $2,500 for a first violation and up to $7,500 for each second or subsequent violation."

Appellant's App. Vol. II pp. 41-48. The Board imposed a fine of $100,000 without specifying an amount for each violation.

[6] Olthof Homes petitioned for judicial review. It challenged, among other things, the amount of the fine. The parties moved for summary judgment. As relevant here, Olthof Homes argued that violations of Sections 24-53 and 24-58 are subject to fines of only $100 (for first violations) or $250 (for second and subsequent violations), not $2,500 or $7,500 as the Board found. The trial court disagreed, granted summary judgment for the Town and the Board, and dismissed the petition for judicial review.

[7] Olthof Homes now appeals.

## Discussion and Decision

[8] Olthof Homes contends that the trial court erred by granting summary judgment for the Town and the Board. We review a motion for summary

judgment de novo, applying the same standard as the trial court. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). That is, "The judgment sought shall be rendered forthwith if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C).

[9] The issue before us is whether violations of Sections 24-53 and 24-58 of the Chesterton Town Code are subject to different fine amounts depending on how the Town prosecutes the violations. The parties agree that the Town can prosecute such violations through its Ordinance Violations Bureau (under Section 1-13 of the Town Code) or through an administrative hearing before the Board (under Section 24-301 of the Town Code). They also agree that when the Town chooses the Ordinance Violations Bureau, as it initially did here, the maximum fines are $100 (for first violations) and $250 (for second and subsequent violations). Olthof Homes argues that those same limits apply when the Town instead chooses an administrative hearing, as it eventually did here. Olthof Homes doesn't dispute that the Town has the authority under state law to make violations of Sections 24-53 and 24-58 punishable by higher fines when an administrative hearing is held. *See* Ind. Code § 36-1-3-8(a)(10)(B) (providing that units of local government generally have the authority to punish ordinance violations with fines of up to $2,500 for first violations and up to $7,500 for second or subsequent violations). Its argument is that the Town, through its ordinances as currently written, hasn't done so. The Town and the Board, on the other hand, contend that the Town Code permits fines up to $2,500 and

$7,500 when the Town chooses to prosecute violations of Sections 24-53 and 24-58 through an administrative hearing. Having considered the relevant ordinances, we agree with Olthof Homes that the Board was limited to imposing fines of $100 and $250.

[10] In arguing that it could be fined only $100 or $250 for each violation of Sections 24-53 and 24-58, Olthof Homes points to the enforcement provisions in those sections. Section 24-53(D) provides:

> In addition to any other remedies provided under this chapter, violations of this section may be prosecuted through the Ordinance Violations Bureau established by § 1-13 of this code of ordinances.
>
> > 1. *Dry weather violations.* Dry weather violations of this section shall be punishable by a fine of $100 for a first offense. Second and subsequent violations shall be punishable by a fine of $250 per occurrence. Each day that a violation is found to exist shall constitute a separate violation. Violations that are not remedied after a second or subsequent violation may result in a stop-work order.
> >
> > 2. *Wet weather violations.* Wet weather violations of this section shall be punishable by a fine of $250 per occurrence. Each day that a violation is found to exist shall constitute a separate violation. Second and subsequent wet weather violations of this section may, in addition to any fine issued, result in a stop-work order.

Appellant's App. Vol. II pp. 15-16. And Section 24-58(B) provides:

The failure to file self-monitoring reports required by this section may be prosecuted through the Ordinance Violations Bureau established by § 1-13 of this code of ordinances. Dry weather violations of this section shall be punishable by a fine of $100 for a first offense. Second and subsequent dry weather violations shall be punishable by a fine of $250. Each day that a violation is found to exist shall constitute a separate violation. We[t] weather violations of this section shall be punishable by a fine of $250. Each day that the violation is found to exist shall constitute a separate violation. Violations that are not remedied after a second or subsequent violation may result in a stop-work order.

*Id.* at 16.

[11] The Board, in finding that it could fine Olthof Homes up to $2,500 or $7,500 for each violation, relied primarily on Section 1-9 of the Town Code, the general penalty ordinance (i.e., the default penalty provision for the entire code, not just the storm-water-management ordinances found in Chapter 24). Section 1-9 provides:

Wherever in this code or in any ordinance of the town, or rule or regulation promulgated by an officer or an agency thereof under the authority invested by law or ordinance, any act as prohibited, required, or is made or declared to be unlawful or an offense, or no specific penalty is provided therefore, the violation of any such provision of this code, ordinance, rule or regulation shall be punished by a fine not to exceed $2,500 for a first violation, and by a fine not to exceed $7,500 for a second or subsequent violation. Every day any violation of this code or any such ordinance, rule or regulation shall continue shall constitute a separate offense.

*Id.* at 13. As to this ordinance, Olthof Homes argues: (1) the word "or" at the beginning of the clause "or no specific penalty is provided therefore" must have been a scrivener's error, because the phrase adds nothing to the ordinance as written; (2) we should treat the clause as though it says "**and** no specific penalty is provided therefore";[1] (3) as modified, the ordinance means that when there is a violation of the Town Code, and no specific penalty is provided therefore, the fine can be up to $2,500 or $7,500; and (4) because Sections 24-53 and 24-58 establish specific penalties of $100 and $250, the higher fines authorized by Section 1-9 aren't available for violations of those sections.

[12] The Town and the Board don't dispute that in Section 1-9 the clause "**or** no specific penalty is provided therefore" should instead be "**and** no specific penalty is provided therefore," so that the section's higher fine amounts are unavailable when a specific lower penalty is provided elsewhere in the Town Code. But they emphasize that Section 24-53(D) and Section 24-58(B) address only prosecutions through the Ordinance Violations Bureau, and they argue that "no specific penalty is provided" for prosecutions through administrative hearings, so the higher fines authorized by Section 1-9 are available in such hearings. We disagree.

---

[1] In support of this request, Olthof Homes cites *Estabrook v. Mazak Corp.*, where our Supreme Court substituted the word "and" for the word "or" in a state statute because "interpreting 'or' literally . . . would render part of the statute meaningless." 140 N.E.3d 830, 835 (Ind. 2020).

[13]     Section 1-9 doesn't say anything about the method the Town chooses to prosecute a code violation. The focus is on the violation itself: is a specific penalty provided for the violation? For violations of Sections 24-53 and 24-58, the answer is unequivocally "yes." Section 24-53(D) and Section 24-58(B) establish fines of $100 and $250. And while those provisions mention the Ordinance Violations Bureau option but not the administrative-hearing option, the fact remains that they provide specific penalties for violations of Sections 24-53 and 24-58. Therefore, the higher fine amounts established in Section 1-9 are off the table, regardless of the prosecution option the Town chooses.

[14]     The Town and the Board also rely on Section 24-301(A) of the Town Code, which establishes the administrative-hearing option for violations of Chapter 24 and requires a notice that includes the possibility of a fine up to $2,500 or $7,500:

> When the MS4 operator[2] has cause to believe that a user has violated any provision of this chapter, the MS4 operator may initiate an administrative hearing before the Board, as provided in I.C. 36-1-6-9. The MS4 operator shall provide notice of the hearing to the user no later than ten days prior to the hearing and shall include in the notice:
>
>> 1. Specific details of the alleged violation;
>>
>> 2. The date and time of the hearing and a statement that the user has the right to cross-examine witnesses and

---

[2] "MS4" stands for "municipal separate storm water system."

evidence and the right to present evidence regarding the alleged violation; and

**3. A statement that the Board may consider the evidence and, upon a showing of a violation by the preponderance of the evidence, impose an administrative fine of up to $2,500 for a first violation of this article, and up to $7,500 for a second or subsequent violation of this article, or order other appropriate relief.**

Appellant's App. Vol. II p. 32 (emphasis added). According to the Town and the Board, this notice requirement confirms that the higher fines are available for any violations of Chapter 24—including violations of Sections 24-53 and 24-58—when the Town chooses the administrative-hearing option. Again, we disagree.

[15] We first note an apparent drafting error in this provision. As written, it requires notice that the Board may impose a fine up to $2,500 or $7,500 for a "violation of this article." The phrase "this article" is a reference to Article VII of Chapter 24, which consists of Sections 24-300, 24-301, and 24-302, three general enforcement provisions. *See* Chesterton, Indiana Code of Ordinances, https://codelibrary.amlegal.com/codes/chesterton/latest/chesterton_in/0-0-0-3020 [https://perma.cc/AY33-K3SK]. Presumably the provision should instead say "violation of this chapter," i.e., Chapter 24 as a whole.

[16] Setting aside that drafting issue, we acknowledge that Section 24-301(A) indicates that the Town Council may have **intended** to make the higher fines available whenever the Town chooses to prosecute a violation through an

administrative hearing. Ultimately, though, it is a procedural ordinance. It doesn't purport to authorize any particular fines. To determine what fines are authorized, we must go back to Section 1-9, the general penalty ordinance. And as discussed above, Section 1-9 doesn't authorize the higher fines for violations of Sections 24-53 and 24-58 because specific lower penalties are provided for such violations. At most, then, Section 24-301(A) creates an ambiguity about the availability of the higher fines. When punitive statutes and ordinances are ambiguous, they must be strictly construed in favor of the party being punished. *See Klinker v. First Merchs. Bank, N.A.*, 964 N.E.2d 190, 195 (Ind. 2012) (noting that punitive statutes "should be strictly construed"); *Palmer v. Stockberger*, 193 N.E.2d 384, 387 (Ind. Ct. App. 1963) ("Statutes . . . which provide penalties for failure to comply therewith being in derogation of the common law must be strictly construed."); *Noblesville, Ind. Bd. of Zoning Appeals v. FMG Indianapolis, LLC*, 217 N.E.3d 510, 514 (Ind. 2023) ("We interpret ordinances and statutes using the same methodology."). Here, the Town and the Board are asking us to do the opposite: **liberally** construe punitive ordinances **against** Olthof Homes.

[17] The Town and the Board also argue that the option of higher fines for violations of Sections 24-53 and 24-58 is important because a user can just continually pay the lower fines and treat them as a cost of doing business. Indeed, Olthof Homes appears to have done exactly that from October 2020 through March 2022, paying more than 100 fines of $100 or $250, totaling approximately $38,000. But when a user does that, the Town has another enforcement option that is written into both Section 24-53 and Section 24-58: a

stop-work order. The Town issued such an order here, and Olthof Homes quickly came into compliance. In short, this isn't an enforcement scheme that is rendered ineffectual without the option of higher fines. And even if it were, fixing that flaw would be the job of the Town Council, not the judiciary.

[18] The bottom line is that while the Town has the authority to make violations of Section 24-53 and 24-58 punishable by fines of up to $2,500 or $7,500, it must do so clearly, and it hasn't. Therefore, the Board erred by determining that it had the option of imposing those higher fines.

[19] The Town and the Board argue, in the alternative, that if the higher fine amounts are not available for violations of Sections 24-53 and 24-58, we should still affirm because there were enough violations to justify a total fine of $100,000. Even if we agreed with their math, we have no choice but to remand to the Board.

> A simple but fundamental rule of administrative law is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis.

*Dev. Servs. Alts., Inc. v. Ind. Fam. & Soc. Servs. Admin.*, 915 N.E.2d 169, 187 (Ind. Ct. App. 2009) (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)), *trans. denied*. Remand gives the administrative agency an opportunity to correct the

irregularities in its proceedings and avoids the court's encroachment upon the agency's administrative functions. *Ind. Alcoholic Beverage Comm'n v. Edwards*, 659 N.E.2d 631, 636 (Ind. Ct. App. 1995).

[20] In remanding, however, we note potential problems with the Town and the Board's math. They argue:

- The 40 violations of Section 24-53 could lead to a total fine of $9,850 ("$100 for the initial violation and $250 for each subsequent violation")

- The 106 violations of Section 24-58 could lead to a total fine of $26,350 ("$100 for the first violation and $250 for each of the subsequent violations")

- The 12 violations of the Permit, from March 18 to March 29, could lead to a total fine of $85,000 ("$2,500 for the first violation and $7,500 for each of the eleven subsequent violation[s]"), since the violations of the Permit were "separate" from the violations of Sections 24-53 and 24-58, they do not have "a specific, corresponding fine," and they are therefore "subject to the general penalty provisions of Section 1-9"

Appellees' Br. pp. 31-32. To begin, it is not at all clear from the record which violations the Board treated as first violations and which it treated as second or subsequent violations. But our main concern is with the third proposition. The Board found 12 violations of the Permit in addition to the violations of Sections 24-53 and 24-58, but from what we can tell, the Permit violations were not "separate" from the ordinance violations. In other words, it appears that the

violations of Sections 24-53 and 24-58 **were** the violations of the Permit. If that is the case—if there were no violations of the Permit other than the violations of Sections 24-53 and 24-58—then Olthof Homes shouldn't be separately fined for violating the Permit.

[21] We are also skeptical of the Board's decision to impose a blanket fine rather than specifying individual fines for individual violations. Olthof Homes challenged that approach before the trial court but chose not to on appeal. Yet a blanket fine can lead to confusion and speculation, especially when different fines are available for first and subsequent violations. The administrative hearing before the Board involved multiple violations of multiple ordinance provisions relating to multiple parcels within the Springdale subdivision, and, again, it isn't clear from the record which violations the Board considered first violations and which it considered second or subsequent violations. If the Board imposes another blanket fine on remand, that may invite further litigation.

[22] Having flagged those issues, we reverse the trial court's grant of summary judgment to the Town and the Board and direct the court to grant summary judgment for Olthof Homes and remand the matter to the Board for a re-determination of the fine.

[23] Reversed and remanded.

Bailey, J., and Scheele, J., concur.

ATTORNEY FOR APPELLANT

Greg A. Bouwer
Koransky, Bouwer, & Poracky, P.C.
Dyer, Indiana


ATTORNEYS FOR APPELLEES

Charles F.G. Parkinson
L. Charles Lukmann, III
Connor H. Nolan
Harris Welsh & Lukmann
Chesterton, Indiana