

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-19-00304-CV

———————————————————

SCOTT'S BIG TRUCK SALES, LLC; DON'S BIG TRUCK SALES, LLC; DONALD R. SCOTT; AND JOHNNY A. SCOTT, Appellants

V.

AUTOMOTIVE FINANCE CORPORATION, APPELLEE

On Appeal from the 96th District Court
Tarrant County, Texas
Trial Court No. 096-291366-17

Before Gabriel, Womack, and Wallach, JJ.
MEMORANDUM OPINION BY JUSTICE GABRIEL
JUSTICE WOMACK CONCURS WITHOUT OPINION.

**MEMORANDUM OPINION**

This appeal is from a final judgment awarding damages and attorney's fees to appellee and lender Automotive Finance Corporation (AFC) in its suit to collect a debt from appellants and borrowers Scott's Big Truck Sales, LLC, and Don's Big Truck Sales, LLC and from appellants and guarantors Donald R. Scott and Johnny A. Scott. The trial court's final judgment incorporated and was based on its partial summary judgment for AFC on its breach-of-contract, breach-of-guaranty, and Indiana statutory claims for fraud and deception. We affirm in part and reverse and remand in part.

## I. BACKGROUND

Scott's Big Truck Sales and Don's Big Truck Sales signed notes[1] with AFC under a floorplan-lending arrangement, in which the lender provides financing to an auto dealership on a vehicle-by-vehicle basis so that the dealership can buy inventory. The dealer is obligated to repay the lender when the dealer sells the particular vehicle that had been financed. In conjunction with the notes, Donald Scott signed a guaranty of payment for amounts due on the Scott's Big Truck Sales note, and Johnny Scott signed a guaranty of payment for amounts due on the Don's Big Truck Sales note. Donald was a member of Scott's Big Truck Sales and Johnny a member of Don's Big Truck Sales.

---

[1]Scott's Big Truck Sales signed two notes, and Don's Big Truck Sales signed one.

2

AFC eventually sued Scott's Big Truck Sales, Don's Big Truck Sales, Donald, and Johnny (all four, collectively, the Scotts) to recover amounts it claimed were due on the notes and guaranty agreements. As part of the suit, AFC attempted to recover via sequestration four vehicles that had been sold but for which the Scotts had not remitted payment to AFC. AFC recovered two of the vehicles and credited the accounts accordingly. But it was not able to recover two others. As to those vehicles, AFC sought statutory civil damages for fraud and deception under Indiana law.

After AFC moved for summary judgment on its claims, the Scotts filed a plea to the jurisdiction challenging AFC's standing to sue them. AFC filed a response and attached evidence. The Scotts objected to a portion of AFC's summary-judgment evidence, but the trial court overruled all of their objections. The trial court did not sign a written order on the plea to the jurisdiction at the time, but it did grant AFC partial summary judgment on all of its claims except its request for attorney's fees.[2]

AFC then filed a second summary-judgment motion as to attorney's fees, and the Scotts filed a motion asking the trial court to reconsider its partial summary judgment ruling and the jurisdictional issue. The trial court granted AFC summary judgment on its attorney's fees request, denied the Scotts' motion to reconsider, and

---

[2]AFC had initially sought summary judgment on its attorney's-fees request, but it withdrew that part of its motion in light of the Texas Supreme Court's opinion in *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 496–503 (Tex. 2019). The trial court's partial summary judgment order stated that the court would consider the attorney's fees request at a later date "upon presentation."

rendered a final judgment incorporating the partial summary judgment and awarding AFC attorney's fees. The Scotts appeal.

## II. STANDING TO ENFORCE NOTES

In their first issue, the Scotts argue that AFC did not prove its standing to maintain a suit against them based on the debt. They base their argument primarily on the loan-related documents attached to AFC's pleadings and incorporated into those pleadings by reference; all of those documents state, at the bottom of each page, "This receivable has been sold to AFC Funding Corporation and an interest therein has been granted to [either BMO Capital Markets Corp. or Bank of Montreal] as agent." The Scotts contend that this statement is a judicial admission that when AFC filed suit, it no longer had any interest in the notes it sought to enforce and, therefore, that AFC pled facts negating its standing. *See Rockwell Commons Assocs., Ltd. v. MRC Mtg. Grantor Trust I*, 331 S.W.3d 500, 505 (Tex. App.—El Paso 2010, no pet.) (noting that element of suit to recover on promissory note is that plaintiff is legal owner and holder of note). The Scotts raised this issue in their plea to the jurisdiction and also in their response to AFC's summary-judgment motion.[3] AFC argued in its motion for summary judgment that it was the appropriate party to enforce the contracts.

---

[3]In accordance with the Scotts' briefing, we review this issue in the context of the trial court's ruling on the plea to the jurisdiction. Although the trial court did not initially render an order on the plea to the jurisdiction, it expressly denied it by denying the Scotts' motion to reconsider, in which they had asked the trial court to dismiss AFC's "case for want of jurisdiction." *Cf. Bass v. Waller Cty. Sub-Reg'l Planning Comm'n*, 514 S.W.3d 908, 912 (Tex. App.—Austin 2017, no pet.) (declining to

4

## A. STANDARD OF REVIEW

We review de novo a trial court's ruling on jurisdiction. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004) (op. on reh'g); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993) (holding that lack of standing defeats a trial court's subject-matter jurisdiction). A plaintiff must plead facts that affirmatively show trial-court jurisdiction. *Tex. Ass'n of Bus.*, 852 S.W.2d at 446. We construe the pleadings liberally in the plaintiff's favor, accept all factual allegations as true, and look to the plaintiff's intent. *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 150 (Tex. 2012). We consider relevant evidence of jurisdictional facts when necessary to resolve the jurisdictional issues raised taking as true all evidence favorable to the nonmovant, indulging every reasonable inference, and resolving any doubts in the nonmovant's favor. *Miranda*, 133 S.W.3d at 227–28. If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the factfinder. *Id.* But if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228.

---

consider trial court's lack of ruling on jurisdictional plea in context of interlocutory appeal from partial summary judgment). But even if we were to review the standing issue solely in the context of the trial court's partial-summary-judgment ruling, our holding would be the same.

## B. ANALYSIS

The notes and guaranty agreements provide that the documents are to be construed according to Indiana law.[4] Both Indiana and Texas law provide that a note may be enforced by an owner and holder. *See* Ind. Code §§ 26-1-1-201(20)(A), 26-1-3.1-301; Tex. Bus. & Com. Code Ann. § 3.301; *Collins v. HSBC Bank USA, Nat'l Ass'n*, 974 N.E.2d 537, 540–41 (Ind. Ct. App. 2012); *cf. Manley v. Wachovia Small Bus. Capital*, 349 S.W.3d 233, 240 (Tex. App.—Dallas 2011, pet. denied) ("The owner of a note may enforce the note even if he is not a holder."). A holder is a person who possesses a negotiable instrument payable to an identified person when the one in possession is the person identified in the note. *Pichon v. Am. Heritage Banco, Inc.*, 983 N.E.2d 589, 599 (Ind. Ct. App. 2013) (citing Ind. Code § 26-1-1-201(20)), *trans. denied*; *Haley v. Beneficial Fin. I Inc.*, No. 13-18-00058-CV, 2019 WL 2709015, at *4 (Tex. App.—Corpus Christi–Edinburg June 28, 2019, no pet.) (mem. op.).

According to the Scotts, the form language on the notes stating that "[t]his receivable has been sold" proves conclusively that AFC has no right to enforce them.

---

[4]When parties have contractually chosen the law of another state to govern disputes, matters of remedy and procedure are still governed by Texas law in Texas courts. *Bayer Corp. v. DX Terminals, Ltd.*, 214 S.W.3d 586, 594 n.3 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). Additionally, even if the parties had disputed which state's law applies, we would not need to engage in a choice-of-law analysis here, except as to the Indiana statutory law, because Texas law regarding the notes and guaranty agreements is consistent with Indiana law. *See In re Wells Fargo Bank Minn. N.A.*, 115 S.W.3d 600, 606 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding [mand. denied]).

The Scotts also point to legends printed on a report attached as evidence to AFC's motion for partial summary judgment for their argument's support:

> THE RECEIVABLES DESCRIBED HEREIN HAVE BEEN SOLD TO AFC FUNDING CORPORATION PURSUANT TO AN AMENDED AND RESTATED PURCHASE AND SALE AGREEMENT, DATED AS OF MAY 31, 2002 BETWEEN AUTOMOTIVE FINANCE CORPORATION AND AFC FUNDING CORPORATION, AS AMENDED; AND AN INTEREST IN THE RECEIVABLES DESCRIBED HEREIN HAS BEEN GRANTED TO THE AGENT FOR THE BENEFIT OF THE SECURED PARTIES, PURSUANT TO A SEVENTH AMENDED AND RESTATED RECEIVABLES PURCHASE AGREEMENT, DATED AS OF DECEMBER 20, 2016 AMONG AFC FUNDING CORPORATION, AS SELLER, AUTOMOTIVE FINANCE CORPORATION, AS SERVICER, FAIRWAY FINANCE COMPANY, LLC AND SUCH OTHER ENTITIES FROM TIME TO TIME AS MAY BECOME PURCHASERS THEREUNDER, BANK OF MONTREAL, AS AGENT, BMO CAPITAL MARKETS CORP. AS PURCHASER AGENT FOR FAIRWAY FINANCE COMPANY, LLC, AND THE PURCHASER AGENTS FOR SUCH OTHER PURCHASERS THEREUNDER, AS AMENDED.[5]

But AFC contends that it sold only the right to payment under the notes and that it retains an ownership interest in the loan documents.[6] AFC attached to its response to the Scotts' plea to the jurisdiction two affidavits from Dwayne Price:[7] one

---

[5]The report also contains a similar legend as to "CANADIAN RECEIVABLES."

[6]AFC also argued in its response to the Scotts' plea to the jurisdiction that its status as servicer of the "receivables" gave it standing. But we need not address that alternative ground for standing. *See* Tex. R. App. P. 47.1.

[7]On appeal, the Scotts complain that the affidavits were unsworn and that one of them did not sufficiently authenticate the attached pool-receivables sales agreement. But the Scotts did not complain about these form defects in the trial

as its assistant treasurer and the other as the assistant treasurer of AFC Funding Corporation (Funding). Price averred that AFC created Funding as a wholly owned subsidiary "solely for the purpose of purchasing finance receivables from AFC and selling undivided participation interests in the pool of finance receivables, referred to as a securitization pool, to a bank[-]conduit facility on a revolving basis." According to Price, "AFC does not sell, and Funding does not purchase, the underlying loan contracts between AFC and the used vehicle dealers who are its customers." Price averred that AFC made loans to the two dealerships—Scott's Big Truck Sales and Don's Big Truck Sales—"and [then] sold the rights to payment thereunder (the 'Receivables') into Funding's securitization pool." AFC is the servicer for the pool and is responsible for collecting all the pool receivables.

AFC also attached as evidence the "Receivables Purchase Agreement" signed by Funding as "Seller," AFC as "Servicer," and Bank of Montreal as the agent for seven named purchasers. Under that agreement, each purchaser would periodically "purchase and make reinvestments of" defined percentages of "Pool Receivables." A "Pool Receivable" is defined as "a Receivable conveyed to the Seller pursuant to the

_____

court; therefore, they did not preserve that part of their complaint for appeal. *See Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 166 (Tex. 2018) (per curiam); *Cty. of El Paso v. Baker*, 579 S.W.3d 686, 694 (Tex. App.—El Paso 2019, no pet.); *see also Mansions in the Forest, L.P. v. Montgomery Cty.*, 365 S.W.3d 314, 317 (Tex. 2012) (per curiam); *Haase v. Abraham, Watkins, Nichols, Sorrels, Agosto & Friend, L.L.P.*, 499 S.W.3d 169, 175, 178 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

8

Purchase and Sale Agreement and not reconveyed to the Originator[8] in accordance with the terms of the Purchase and Sale Agreement." "Receivable" is defined as

> *any right to payment from* any Person, whether constituting an account, chattel paper, instrument, payment intangible or a general intangible, arising from the providing of financing and other services by the Originator . . . to (i) new, used and wholesale automobile, light truck or other Specialty Vehicle dealers . . . and includes the right to payment of any interest or finance charges and other obligations of such Person with respect thereto.

[Emphasis added.]

AFC's evidence shows that its arrangement with Funding involved selling only its right to payment under the notes it entered into with Scott's Big Truck Sales and Don's Big Truck Sales; AFC did not divest itself of its entire interest in the notes and guaranty agreements. Moreover, under the Funding Receivables Purchase Agreement, Funding did not transfer all of its payment rights to a particular purchaser; instead, it sold the purchasers percentage interests according to a formula. The language the Scotts contend is proof that AFC has no interest in the notes was required by the Receivables Purchase Agreement. The use of the word "receivable" is consistent with the definition in the Funding Receivables Purchase Agreement and, in the context of that agreement, is not conclusive proof that AFC divested itself of all ownership interest in the notes and guaranty agreements.

---

[8]Originator is defined in a separate agreement not included as jurisdictional evidence.

9

Moreover, as servicer of the receivables, AFC was required to "hold for the benefit of the Secured Parties in accordance with their respective interests, all records and documents (including without limitation computer tapes or disks) with respect to each Pool Receivable." In the affidavit attached to AFC's summary-judgment motion, its Senior Corporate Investigator Jerome Bosl averred that the attached notes were "records *held by* AFC." [Emphasis added.] Thus, the jurisdictional evidence showed that AFC possessed the Scott's Big Truck Sales and Don's Big Truck Sales notes made payable to it and that it still retained an ownership interest in those notes, having sold only the right to payment thereunder.[9]

The Scotts analogize this case to *Shipley v. Unifund CCR Partners*, 331 S.W.3d 27, 29 (Tex. App.—Waco 2010, no pet.) (op. on reh'g), and argue that it commands a different result. In *Shipley*, the original lender on a credit-card account had sold the account; the new owner had assigned only the right to collect the debt to Unifund CCR Partners but had retained title to the account. *Id.* at 28. Unifund CCR Partners then filed suit to collect the debt. *Id.* The Waco Court of Appeals held that Unifund CCR Partners failed to show its standing to sue to collect the debt because the owner of the debt had not assigned any ownership interest to Unifund. *Id.* at 29–30. Here, however, the evidence shows that AFC sold the receivables—the right to payments

_____

[9]Even if, as the Scotts contend, the stamped language on the notes—attached to and incorporated into AFC's pleadings—constitutes a judicial admission, that factual admission is not contrary to, and does not disprove, AFC's evidence that it remains the owner of the notes except as to the right of payment.

10

on the notes—to Funding but retained ownership and possession of the notes. Therefore, the facts in this case are distinguishable from the facts in *Shipley*.

We hold that the trial court did not err by determining that AFC did not plead facts negating its jurisdiction and therefore had standing to sue the Scotts to collect the debt. We overrule the Scotts' first issue.

## III. OBJECTIONS TO SUMMARY-JUDGMENT EVIDENCE

We next turn to the remainder of the Scotts' summary-judgment issues. In part of their second issue, the Scotts argue that the trial court erred by overruling their objections to Bosl's affidavit. We review the trial court's order overruling the Scotts' objections for an abuse of discretion. *See Starwood Mgmt., LLC v. Swaim*, 530 S.W.3d 673, 678 (Tex. 2017) (per curiam).

### A. BOSL'S PERSONAL KNOWLEDGE

Bosl stated in his affidavit that he had personal knowledge of the facts therein based on "the performance of [his] duties" as AFC's Senior Corporate Investigator; he also stated that he was the custodian of "Deficiency Accounting Records" for AFC and that the records referenced in and attached to the affidavit were kept and made in the regular course of AFC's business. The Scotts objected that Bosl never stated how he came to acquire personal knowledge of the records; therefore, his averment that he had personal knowledge of the records' contents is "conclusory, based on hearsay and speculation, [and] without foundation."

11

Bosl's explanation of his employment with AFC and his status as a records custodian for this particular account was sufficient to show his personal knowledge of the transaction. *See Espinoza v. Wells Fargo Bank, N.A.*, No. 02-13-00111-CV, 2013 WL 6046611, at *3 (Tex. App.—Fort Worth Nov. 14, 2013, pet. denied) (mem. op.); *Energico Prod., Inc. v. Frost Nat'l Bank*, No. 02-11-00148-CV, 2012 WL 254093, at *6 (Tex. App.—Fort Worth Jan. 26, 2012, pets. denied) (mem. op.). Therefore, the trial court did not abuse its discretion by overruling this objection.

## B. CLAIMS-SPECIFIC STATEMENTS

The Scotts challenge several of Bosl's other statements. They first challenge Bosl's averment that "AFC has accelerated maturity of [the] Note[s]" as lacking foundation and as being conclusory. The notes attached as summary-judgment evidence state that in the event of a default, AFC could declare the entire unpaid amount of the note due and owing without notice or demand. Therefore, Bosl's statement—as custodian of the accounts' records—is a factual statement that is based on his knowledge of the loan records and is not conclusory or without foundation. *See Thanphirom v. Wells Fargo Bank, N.A.*, No. 07-20-00034-CV, 2020 WL 3957832, at *3–4 (Tex. App.—Amarillo July 10, 2020, no pet.) (mem. op.) (per curiam); *Gandara v. JP Morgan Chase Bank*, No. 01-03-00926-CV, 2005 WL 615628, at *3 (Tex. App.—Houston [1st Dist.] Mar. 17, 2005, no pet.) (mem. op.). The trial court did not abuse its discretion by overruling this objection.

12

The Scotts also argue that Bosl's statement that "[a]ll conditions precedent to AFC's right to recover judgment . . . [h]ave been performed or have occurred[] and all notices required have been given or have been waived" lacks foundation and is speculative and conclusory. Even if the trial court should have granted the Scotts' objections as to this statement, it was not necessary for AFC to prove its claims because although the Scotts complained generally in their answer that all conditions precedent had not occurred, they did not deny that any specific condition precedent had occurred. Thus, AFC was not required to prove that it performed all required conditions precedent to recover on its claims. *See* Tex. R. Civ. P. 54; *Madhavan A. Pisharodi, M.D., P.A. v. United Biologics, L.L.C.*, No. 04-18-00324-CV, 2020 WL 1443561, at *3 (Tex. App.—San Antonio Mar. 25, 2020, pets. denied) (mem. op.); *see also Affordable Motor Co., Inc. v. LNA, LLC*, 351 S.W.3d 515, 520 (Tex. App.—Dallas 2011, pet. denied) ("To prevail on its motion for summary judgment to enforce the promissory note, LNA was required to prove that (1) the note exists, (2) LNA is the legal owner and holder of the note, (3) Affordable Motor is the maker of the note, and (4) a certain balance is due and owing on the note."). Accordingly, we need not decide whether the trial court abused its discretion by overruling this objection. *See* Tex. R. App. P. 47.1.

13

The Scotts also complain about statements in Bosl's affidavit that relate to the fraud-and-deception causes of action[10] under Indiana law.  Specifically, they complain about the following paragraph:

> Defendants misapplied the proceeds of the sale of a motor vehicle, which were Purchase Money Inventory and held in Trust, by failing to make payment to AFC from said proceeds as provided in the Note.  By misapplying entrusted property and property of a credit institution *in a manner that Defendants knew was unlawful and knew involved substantial risk of loss or detriment to AFC*, Defendants committed criminal deception, as that term is defined by Indiana Code § 35-43-5-3-1.  Furthermore, by transferring the proceeds of the sales in derogation of the Note with the intent to defraud Plaintiff, Defendants committed criminal fraud, as that term is defined by Indiana Code § 35-43-5-4(8).

[Emphasis added.]

This statement is conclusory; it asserts a legal conclusion without stating any specific facts upon which it relies.  Indiana Code Section 35-43-5-3 provides, in part:

> A person who . . . misapplies entrusted property . . . or property of a credit institution in a manner that the person knows is unlawful or that the person knows involves substantial risk of loss or detriment to either the owner of the property or to a person for whose benefit the property was entrusted . . . commits [the Class A misdemeanor of] deception.

---

[10]Although Indiana law describes fraud and deception as criminal offenses, *see* Ind. Code §§ 35-43-3-1, 35-43-5-4(8), it expressly allows a person to recover civil damages for a violation of either of those provisions, *see id.* § 34-24-3-1.  *See also Ecker v. Rochester Ford New Holland, Inc.*, 694 N.E.2d 289, 291 (Ind. Ct. App. 1998) (providing that to recover for civil damages, plaintiff must prove commission of statutorily defined deception or fraud by a preponderance of evidence).  AFC asked the trial court to take judicial notice of these provisions of Indiana law in its motions for summary judgment.  The trial court did not expressly rule on this request, but it referenced Section 34-24-3-1 in its partial summary judgment and in its final judgment.

14

Ind. Code § 35-43-5-3. Indiana Code Section 35-43-5-4(8) provides that a person commits fraud if, "with intent to defraud the person's creditor or purchaser, [the person] conceals, encumbers, or transfers property." *Id.* § 35-43-5-4(8).

Bosl did not include any facts in his affidavit relevant to the Scotts' intent in failing to pay or showing that they knew their actions were unlawful; instead, he merely presented facts showing that they did not timely remit proceeds from sold vehicles, and then he restated the elements of the two causes of action under Indiana law. Likewise, Bosl did not state what the Scotts did with the sales proceeds other than failing to timely remit them to the lender. He simply concludes that they committed statutory deception and fraud under Indiana law without explaining why. *See Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex. 1991) (per curiam) (op. on reh'g) (holding that attorney's expert opinion that he did not commit malpractice, violate the DTPA, or breach a contract was conclusory because it did not explain its legal basis or reasoning for the opinion); *see also Auto. Fin. Corp. v. Kan. Motor Co.*, No. 1:05-cv-01614-RLY-WTL, 2006 WL 1455553, at *3 (S.D. Ind. May 22, 2006) (holding that AFC was not entitled to summary judgment against note guarantors, pursuant to a similar floorplan-financing arrangement, under civil-damages provision of Indiana Code for criminal fraud and deception where AFC provided only general assertions and no facts in support and noting, "Nor would it be easy for it to do so in light of the intent and knowledge requirements to establish deception and fraud").

15

The Scotts objected to two other statements in Bosl's affidavit related to the deception-and-fraud claims: Bosl's averments setting forth the amounts of AFC's "actual damages from the deception and fraud of" Scott's Big Truck Sales and Don's Big Truck Sales and opining that AFC "is entitled to recover from" the Scotts "three (3) times [AFC's] actual damages from such violations, together with attorney's fees, interest, and other costs of collection set out therein." These statements are likewise conclusory. *See Anderson*, 808 S.W.2d at 55. Thus, we sustain this part of the Scotts' second issue and do not consider Bosl's conclusory statements in our review of the propriety of the trial court's summary judgment.

## IV. PROPRIETY OF SUMMARY JUDGMENT

Also in part of their second issue, the Scotts challenge the trial court's summary judgment for AFC on its breach-of-contract and fraud-and-deception causes of action.[11]

---

[11]Although most of the Scotts' argument as to the propriety of summary judgment on the merits restates their standing complaint, they also claim—with a bare minimum of argument—that AFC presented no credible evidence of default or actual damages and that AFC "never presented any evidence that would rise to the level of fraud, deception, or any other criminal conduct." Because the Scotts make at least some argument challenging each ground on which the summary judgment was based, we address their complaints. *See* Tex. R. App. P. 38.1(f); *Ganter v. Indep. Bank*, No. 05-15-00413-CV, 2016 WL 4376284, at *7 (Tex. App.—Dallas Aug. 16, 2016, pet. denied) (mem. op.) ("Although the nonmovant may assert in a general appellate issue that the summary judgment was erroneous, it must also support that issue with argument challenging all possible grounds on which the summary judgment could have been granted or a reviewing court will affirm the summary judgment.").

16

## A. STANDARD OF REVIEW

We review a summary judgment de novo. *Travelers Ins. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A plaintiff is entitled to summary judgment on a cause of action if it conclusively proves all essential elements of the claim. *See* Tex. R. Civ. P. 166a(a), (c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986).

## B. CRIMINAL DECEPTION AND FRAUD UNDER INDIANA LAW

The trial court found that AFC was entitled to judgment from the Scotts under Indiana Code Section 34-24-3-1: $8,828.72 from Scott's Big Truck Sales and Donald Scott and $22,800.00 from Don's Big Truck Sales and Johnny Scott. The trial court's judgment did not specify whether it had found that AFC proved its entitlement to damages for fraud, deception, or both.

Under the Indiana Crime Victims Compensation Act (CVCA), a plaintiff can recover civil damages for a violation of either the fraud or deception statute, in addition to certain other offenses, on proof by a preponderance of the evidence. Ind. Code §§ 34-24-3-1, 35-43-3-1, 35-43-5-4(8); *Klinker v. First Merchants Bank, N.A.*,

17

964 N.E.2d 190, 193 (Ind. 2012); *see Heckler & Koch, Inc. v. German Sport Guns GmbH,* 976 F. Supp. 2d 1020, 1035 (S.D. Ind. 2013) (order). Because the CVCA is punitive in nature and must be strictly construed, it cannot be enlarged by construction, implication, or intendment beyond the fair meaning of the language used. *Flaherty & Collins, Inc. v. BBR-Vision I, L.P.,* 990 N.E.2d 958, 968 (Ind. Ct. App. 2013), *trans. denied.* To establish a viable claim for civil damages under Section 34-24-3-1, a plaintiff must show, in addition to statutory fraud or deception, that the violation caused the plaintiff's loss. Ind. Code § 34-24-3-1; *Flaherty & Collins,* 990 N.E.2d at 968. The *mens rea* requirement of the underlying criminal actions (i.e., fraud or deception) differentiates those acts from the more innocent breach of contract, which the criminal statutes were not intended to reach. *Flaherty & Collins,* 990 N.E.2d at 968.

The notes, which AFC attached as summary-judgment proof, provided in Section 2.6,

> Dealer shall pay to LENDER at the offices of LENDER the Obligations, on demand and without notice, and in any event, with respect to an item of Purchase Money Inventory on the earliest of: (a) LENDER's demand[;] (b) forty-eight (48) hours after the disposition by sale or otherwise of an item of Purchase Money Inventory; or (c) the Curtailment Date. All proceeds of any such disposition shall be received by Dealer in trust for LENDER and forwarded promptly to LENDER as noted below.

The notes further provided that when any Purchase Money Inventory item was sold, the debtor would "hold the amount received from the disposition of inventory in

trust for the benefit of LENDER and . . . pay promptly to LENDER, in accordance with Section 2.6, an amount equal to the unpaid balance of the Purchase Money Inventory Obligations and any other Obligations relating to such Purchase Money Inventory."

Bosl averred that Scott's Big Truck Sales had sold "$4,414.36 worth of vehicles . . . out of trust" and that Don's Big Truck Sales had sold "$11,400.00 worth of vehicles . . . out of trust." He also averred that the dealerships had "failed to pay AFC the proceeds from the following vehicle[s]"; specifically, he stated that Don's Big Truck Sales had sold and failed to remit payment for a 2013 Nissan Altima for a total of $11,400.00 and that Scott's Big Truck Sales had sold and failed to remit payment for a 2007 Lexus ES 350 for a total of $4,414.36.

Other than this unobjected-to affidavit evidence and the conclusory statement in Bosl's affidavit, which we do not consider, AFC provided no evidence that any of the Scotts specifically intended to cause AFC injury or loss by failing to remit payment for the two sold vehicles. Thus, the trial court erred by granting summary judgment to AFC under Indiana Code Section 34-24-3-1 if based on a finding that the Scotts committed criminal fraud under Indiana law. *See Klinker*, 964 N.E.2d at 193, 195 (holding that "summary judgment [for civil damages for criminal fraud] is proper only if the undisputed facts show that, when [the defendant] made the challenged transfers, his conscious objective was to cause injury or loss to [lender] by deceit" and that

19

"summary judgment is almost never appropriate where the claim requires a showing that the defendant acted with criminal intent or fraudulent intent").

As to the criminal-deception statute, the most AFC showed via its summary-judgment proof is that Scott's Big Truck Sales and Don's Big Truck Sales—as makers of the notes—knew that the notes obligated them to hold the proceeds of any auto sales in trust for AFC and to timely remit payment of those proceeds to AFC. Although this is sufficient evidence to support a finding that Scott's Big Truck Sales and Don's Big Truck Sales violated the Indiana deception statute, *see Greg Allen Constr. Co. v. Estelle*, 762 N.E.2d 760, 781 (Ind. Ct. App. 2002) ("[T]he only mental element required to be shown here was McGaughey's knowledge that the manner in which she misapplied the line of credit involved a substantial risk of loss or detriment to Allen Construction."), *aff'd in part and rev'd in part in other grounds*, 798 N.E.2d 171 (Ind. 2003), it is not sufficient evidence to support a finding that Donald and Johnny—who signed only the guaranty agreements in their individual capacities—did so,[12] *see Auto. Fin. Corp. v. Auto Maxx, L.L.C.*, No. 1:06-cv-00623-LJM-WTL, 2006 WL 2024376, at *3 (S.D. Ind. July 17, 2006) (order) (holding that showing of failure of note makers to timely remit payment was not sufficient to prove that closely related note guarantors had sufficient knowledge); *Kan. Motor*, 2006 WL 1455553, at *3 ("All that is attested to

---

[12]Although Donald and Johnny agreed to repay amounts due on the notes, the guaranty agreements did not obligate them to hold any funds in trust, nor is there any evidence that they personally held or applied any of those funds.

at this point is that an inventory of vehicles shows that some vehicles which were floor planned by AFC are no longer on the lot and the proceeds of any sale of those vehicles was not applied to the AFC debt.").

Thus, although the trial court's judgment under Indiana Code Section 34-24-3-1 was proper as to Scott's Big Truck Sales and Don's Big Truck Sales based on a finding that they violated the Indiana deception statute, the trial court erred by also finding Donald and Johnny liable under Section 34-24-3-1 because no evidence supports a finding that they violated either the fraud or deception statutes. We sustain this part of the Scotts' second issue in part and overrule it in part.

## C. BREACH OF CONTRACT AND GUARANTY AGREEMENTS

Other than AFC's standing, which we have already addressed, the Scotts raise only two arguments as to the propriety of summary judgment on the breach-of-contract and breach-of-guaranty claims: AFC provided no credible proof of default or of any actual damage to AFC. Their arguments appear to hinge on their contention that the trial court should have granted their objection that Bosl did not adequately demonstrate his personal knowledge of the facts, an argument that we have already rejected.

To recover on the notes from Scott's Big Truck Sales and Don's Big Truck Sales, AFC had to prove the existence of the notes, that the defendants signed them, that AFC was the legal owner and holder of the notes, and that a certain balance was due and owing on the notes. *See Rockwall Commons*, 331 S.W.3d at 505. To support a

claim for breach of the guaranty agreements, AFC had to prove the existence, ownership, and terms of the guaranty contracts; that the guarantors' liability was established under the contracts' terms; and the guarantors' failure or refusal to perform. *Chahadeh v. Jacinto Med. Grp., P.A.*, 519 S.W.3d 242, 246 (Tex. App.—Houston [1st Dist.] 2017, no pet.). Indiana law is consistent; the failure to pay amounts due under a guaranty agreement is a breach of contract. *See Keesling v. T.E.K. Partners, LLC*, 861 N.E.2d 1246, 1251 (Ind. Ct. App. 2007); *Estate of Hofgesang v. Hansford*, 714 N.E.2d 1213, 1217 (Ind. Ct. App. 1999). To prove a breach of contract, a plaintiff must prove (1) the existence of a contract, (2) the defendant's breach, and (3) damages. *McKeighen v. Davies Cty. Fair Bd.*, 918 N.E.2d 717, 721 (Ind. Ct. App. 2009).

Here, AFC attached as summary-judgment evidence the signed notes and loan term sheets for Scott's Big Truck Sales and Don's Big Truck Sales, as well as the guaranty agreements signed by Donald and Johnny. The guaranty agreements obligate the guarantor to pay all amounts due under the notes. AFC also presented Bosl's affidavit, in which he averred that Scott's Big Truck Sales and Don's Big Truck Sales had failed to make all required payments under the notes and that all amounts due under both notes had been accelerated; that Scott's Big Truck Sales owed AFC $104,656.61, which included the $4,414.36 for the 2007 Lexus, under its notes; and that Don's Big Truck Sales owed AFC $45,987.43, which included the $11,400 for the 2013 Altima, under its note. Additionally, AFC attached to Bosl's affidavit several

22

"Dealer Payoff" reports that listed those same amounts due. The Scotts did not provide any controverting evidence in their response to the motion for summary judgment.

Because AFC presented uncontroverted evidence that it was entitled to enforce the notes, that the Scotts had failed to pay the accelerated amounts due under the notes as guaranteed, and the exact amounts due, we hold that the trial court properly granted summary judgment for AFC on its breach-of-contract claim regarding the notes and guaranty agreements. We therefore overrule this part of the Scotts' second issue.

## V.  ATTORNEY'S FEES

The Scotts bring two complaints related to the attorney's fees assessed: that there is no evidence to support the imposition of appellate attorney's fees and that if we reverse any part of the summary judgment, we must remand to the trial court for a recalculation of attorney's fees. We need not address the Scotts' appellate attorney's-fees complaint because AFC argued that it was entitled to attorney's fees based on contractual provisions in the notes and guaranty agreements, as well as the Indiana Code. Ind. Code § 34-24-3-1, § 1(3). Its attorney's affidavit did not distinguish fees among the claims and parties and neither did the trial court's judgment. Because we are reversing the summary judgment on the statutory causes of action as to Donald and Johnny, we also reverse the attorney's fees award. *See Reed v. Lake Country Prop.*

23

*Owners Ass'n, Inc.*, No. 02-14-00282-CV, 2016 WL 3655589, at \*9 (Tex. App.—Fort Worth July 7, 2016, no pet.) (mem. op.).

## VI. CONCLUSION

Having overruled the Scotts' first issue and their second issue in part, we affirm the trial court's judgment awarding damages for breach of contract and breach of guaranty to AFC. We also affirm the trial court's judgment awarding additional damages to AFC from Scott's Big Truck Sales and Don's Big Truck Sales under Indiana Code Section 34-24-3-1. But having sustained part of the Scotts' second issue as to the award of $8,828.72 in additional damages from Donald Scott and the award of $22,800 from Johnny Scott under Indiana Code Section 34-24-3-1, we reverse that part of the trial court's summary judgment.[13] Because we reverse part of the trial court's summary judgment, we additionally reverse the trial court's attorney's fees award. We remand this case to the trial court for further proceedings on AFC's claim for additional damages from Donald and Johnny Scott and its attorney's fees request.

/s/ Lee Gabriel

Lee Gabriel
Justice

Delivered: December 17, 2020

---

[13]Donald and Johnny did not file their own summary-judgment motion as to these claims; therefore, we cannot render judgment for them. *See Dyegard Land P'ship v. Hoover*, 39 S.W.3d 300, 315 (Tex. App.—Fort Worth 2001, no pet.).

24